Tayeok, C. J.
dissentiente — The principle is too clear to be controverted, that a contract cannot be enforced in' a Court of Law, if entered into by a person so drunk as to be incapable of deliberation. It results from the general principles of justice, that as the essence of a contract consists in consent, a person must be capable of yielding that consent, and must necessarily have the use of his reason, that he may have the ability to contract 5 he must be mentally as well as corporally present. "When, therefore, drunkeness has proceeded safar, as absolutely to destroy the reason, it renders a person in that state, so long as it continues, incapable of contracting, since it renders him incapable of consent. There is such a perfect harmony of opinion on this subject, among all the writers, who have traced the rules, that ought to govern human conduct, up to the first principles of natural reason, that it seems singular at first view, that any thing should be found, in our equitable system, apparently in collision with so reasonable and just a doctrine. (1 Pothier, 29. Erskine’s Institutes, 447. Puffendorf, B. 1, c. 4, s. 8.) The rule seems to be settled, that if a man enters into an agreement in a state of drunkenness, Equity will not on that account alone set it aside, particularly where it is a reasonable one to settle family disputes. (3 P. W. 130 n. 1 Vezey, 19.) But if any advantage be taken of him, while he is in that situation, o.r if be is brought into it, by the contrir- *48 anee and management of the person, who obtained the deed from him, this would be fraudulent. (1 Cha. Cas. 202.)
It will be found, however, upon an examination of the cases, that the rule in a Court of Equity, relates only to the common case of intoxication, on which account, alone, that Court will not set aside an agreement, more especially if it be reasonable in itself. It will not interfere on either side, not to assist a person who has obtained a deed from another, in a state of intoxication ; nor to aid the person giving a deed in that situation, to set it aside. But with respect to that extreme state of intoxication, that deprives a man of his reason, such as this case describes, I cannot doubt that a Court of Equity would, as a Court of Law clearly will, pronounce a deed invalid, if executed in that state, whether the party voluntarily assume it, or be brought into it, by the contriv-anóe and management of the other party. (18 Vezey 12, Butter 172.)
So far it appears to me to be perfectly clear, that if James McLean had been sued by the payee, on the bond which he gave for $100, he might have given in evidence, on the general issue, the condition in which he was when lie executed the same, and thereby avoided it.
The next enquiry is, whether the Defendant may rely on the same defence, as against the Plaintiff, the assignee of the bond.
The act of 1786, which first made bonds negotiable, subjects them to the same rules with promissory notes j and, consequently, whatever may be set up as a defence against the endorsee of a note, is equally available against the assignee of a bond. It is well settled, that, any illegality in the consideration of a note, will affect an endorsee to whom it is assigned after it becomes due, for that circumstance renders it so suspicious, that the endorser must stand in the situation of the payee. The law will imply notice of the illegality of the considera- *49 iion, whenever such circumstances exist, as might reasonably be expected to incite a man to inquire into the contract between the original parties. Here the note was endorsed more tiian two months after it became payable, and it is therefore competent for the Defendant to avail himself of any defence, which lie might have setup against the payee, such as fraud, want of consideration, payment, &c. (3 Term. Rep. 80. 88 n. 13 East. 497.)
It is however objected to the Defendant’s availing himself of this defence, that he was not drunk when ho gave the bond now sued for, that he executed it with full assent and deliberation, and that the consideration of this bond was not illegal, whatever might have been that of the 8100 bond obtained from James McLean.
That this objection to the defence is not valid, will appear most clearly from an examination of the celebrated case of Collins v. Blantern, in 2 Wilson, 348. In that case the principle of this objection was well considered, and overruled, upon reasoning, which appears to me quite satisfactory. As this part of the case presents the only difficulty I ever felt in it, and which is now entirely removed from a consideration of th.e case just quoted, and one other, I find it necessary to be somewhat particular in the statement of them, in order to place my opinion in its true point of view. John Rudge had indicted five persons for perjury, in five several indictments, which were all ready to come on for trial, when the corrupt agreement was made. That agreement was, that Rudge would not appear to prosecute the indictments, provided Edward Collins, a stranger, would execute his note of hand to Rudge for the sum of ¿6350, and it was agreed at the same time, that two of the Defendants in the indictments, together with Robert Blantern, then a stranger, should enter into a bond, conditioned for the payment of the same sum, as an indemnity to Collins, in the event of his being compelled to pay the note to Rudge. The note and the bond were executed on the *50 game day; Collins sued Blantern on the bond, and one of the grounds of defence relied on was, that Collins was not privy to the corrupt agreement, and the .consideration of the bond, at least, was not unlawful, however the note may have been. But the Court held clearly* that the whole transaction is to be considered as one entire agreement; that the manner of the transaction was intended to gild over and conceal the truth, and that whenever Courts of Law see such attempts made to conceal such wicked deeds, they will brush away the varnish, and show the transactions in their true light.
in that case Collins was privy to the corrupt agreement: in this, Guy, the Plaintiff, was connected with the illegal transaction by operation of law, in receiving the endorsement of the bond after it became due, and when by applying to the Defendant, he might have obtained information of the illegality of the consideration.
In that case Blantern knew that his bond was given to indemnify Collins against a note, which was founded on & corrupt agreement: in this, the Defendant was not apprised when he gave his bond, that one of his brother’s bonds had been fraudulently obtained from him, but received them on the assurance of Gmj, that they were all good.
. A stronger light is thrown on this part of the case, by what is said by the Court in the case of Cuthbert v. Haley, 8 Term. Rep. 390.
The .principal decision was, that if an usurious note is transferred to an innocent endorsee, for a valuable consideration, and afterwards the maker of the note give his bond to the endorsee for the amount, the bond is good. In giving their opinion, the Court say “ that if one security be substituted for another by the parties, in order to get rid of the statute of Usury, the substituted as well as the original security will be void.”
The sole reason of the distinction must be the innocence of the endorsee, and the guilt of the party who con- *51 senfed to the usury. If there is any difference, where the new security is given by the borrower, and a stranger, ignorant of the original transaction, it must be altogether in favor of the latter j and that is precisely the case we have to decide.
Nor does it impair the defence offered in this case, that part of the consideration of this bond was legal, inasmuch as two of James McLean’s bonds, for which it was given, were untainted by fraud; for I take it to be clear law, that when a security is partly given for an illegal consideration, the whole of it is void and cannot be apportioned. (Scott v. Gilmore, 3 Taunt. 226. 1 Mar. 349.)
The cases I have cited are relative to contracts made, void by statute: but there is no difference between them, and contracts void at common law, as it is strongly said by Lord C. J. Wilmot in Collins v. Blantren: “I think there is no difference between things made void by act of Parliament, and things void by the common law. Statute law and common law both originally flowed from the same fountain, the legislature. I am not for giving a preference to either, but if to either, I should be for giving it to the common law: if there had even been any idea or imagination, that such a contract as this could have stood good at common law', surely the legislature would have altered it. There has been a distinction mentioned between a bond being void by statute, and at common law, and it is said tiiat in the first case, if it be bad or void in any part, it is void in toto; but that at common law, it may be void in part, and good in part, but this proves nothing in the present case. The Judges formerly thought, an act of Parliament might be eluded if they did not make the whole void : it is said, the statute is like a tyrant, where he comes, he makes ail void; but the common law is like a nursing fathet, it makes only void that part where the fault is, and preserves the rest/5’
This case might have been 'reasoned upon other prin- *52 ende?. such as that a bond void in its creation, cannot be made good by any subsequent transaction; but I have chosen rather to rest my opinion upon grounds more fa- ... ,. milar m practice.
Upon the whole case, I think the Defendant is entitled to a new tidal, and that if the allegations made by him relative to the contract, as stated in the case, are established to the satisfaction of the Jury, ■ he is entitled to a verdict in his favor.